UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ODANIS CARDOZA and VICTOR CERDA, on behalf of themselves and all others similarly situated,

*Plaintiffs,*

-against-

LND TECHNICAL SERVICES LLC,

*Defendant.*

Civil Action No.

**FLSA COLLECTIVE ACTION and RULE 23 CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiffs Odanis Cardoza and Victor Cerda, individually and on behalf of themselves and all others similarly situated, allege as follows:

## NATURE OF THE ACTION

1. This action is brought on behalf of the Plaintiffs and a putative class of laborers, workmen, and mechanics employed by Defendant LND Technical Services LLC ("LND") to perform testing, inspection, maintenance, service, and repair of electrical systems, including at public facilities under contracts between LND and New York State.

2. Under its public contracts, LND was required, as a matter of fact or by operation of law, to pay Plaintiffs the applicable prevailing wage rates and supplemental benefits for electrical testing, inspection, maintenance, service, and repair of electrical systems established by the New York State Department of Labor, pursuant to § 220 of the New York Labor Law ("NYLL"). However, LND failed to do so, both by paying Plaintiffs at a lesser rate for work on public projects and by failing to pay for overtime work, compensable travel time, and off-the-clock work.

3. Plaintiffs also seek to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., NYLL § 190 *et seq*., and 12 NYCRR § 142-3.2. Plaintiffs regularly worked more than 40 hours per work week, often working anywhere from 50 to over 70 hours per week. LND required Plaintiffs to work these hours but maintained a policy or practice of not paying overtime. As recently as November 2, 2026, LND listed Plaintiffs' position, Field Service Technician, on its website as "exempt / salaried", though there is no applicable overtime exemption under New York or federal law.

4. Plaintiffs seek to represent a collective of LND employees who performed electrical testing, inspection, maintenance, service, and repair work in New York State to remedy violations of the FLSA's overtime requirements (the "Collective," composed of "Collective Members").

5. Plaintiffs also seek to represent a Rule 23 class of LND employees who performed electrical testing, inspection, maintenance, service, and repair work in New York State to assert claims for prevailing wages guaranteed by NYLL § 220 as third-party beneficiaries to LND's state contracts, as well as claims under the NYLL for unpaid overtime, unpaid straight time wages, and late paid wages (the "Class," composed of "Class Members").

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the FLSA, 29 U.S.C. § 201 et seq.

7. The Court's supplemental jurisdiction over Plaintiffs' state law claims is invoked pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts.

8. In the alternative, the Court has subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332, as Plaintiffs and Defendant are citizens of different states, and the amount in controversy in this matter exceeds $75,000.

9. Plaintiff Victor Cerda is domiciled in Pennsylvania. Plaintiff Odanis Cardoza is domiciled in Florida.

10. Upon information and belief, LND has four members: Phuong Le, Kevin Halma, Anh Dao, and Alex Echeverria. Each member is domiciled in Texas.

11. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims of Plaintiffs, the Class, and the Collective occurred within this judicial district.

12. LND employed Plaintiffs, the Class, and the Collective on public works projects improving public facilities located within the Southern District of New York. Among others, Plaintiffs worked at the Manhattan Psychiatric Center and New York Psychiatric Center (New York County), as well as the Bronx Psychiatric Center (Bronx County). Mr. Cerda additionally worked at the Green Haven Correctional Facility (Dutchess County), Cook Chill Production Center (Rockland County), and the Mid-Hudson Forensic Psychiatric Center (Orange County).

13. Upon information and belief, LND maintained a corporate office in the Bronx where it coordinated its New York operations within the relevant time period.

14. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

15. Plaintiff Victor Cerda is an adult individual who is a resident of Pennsylvania. Mr. Cerda worked for LND as a field service technician from approximately July 2023 until August 31, 2026.

16. Plaintiff Odanis Cardoza is an adult individual who is a resident of Florida. Mr. Cardoza worked for LND as a field service technician from approximately July 2024 until October 2025.

17. Plaintiffs consent to participation in the Collective and they have each individually filed with this Complaint a "Consent to Sue."

18. Defendant LND is a limited liability company incorporated in Delaware. It maintains a principal place of business in Houston, Texas. LND's business "specializes in Engineering Services, Testing, Commissioning, and Maintenance for Low, Medium, and High Voltage Electrical Equipment." https://lndts.com/about-us.html. LND offers services on a nationwide basis, deploying employees to perform electrical work in New York, Texas, Colorado, Washington, Louisiana, North Carolina, Ohio, and upon information and belief, other states and localities.

19. LND operates an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s). At all relevant times, LND received annual revenue in excess of $500,000, engaged in interstate commerce and activities, including provision of electrical testing and maintenance services on a nationwide basis, and handled or otherwise worked on goods moved in or produced for interstate commerce.

20. LND employed Plaintiffs within the meaning of the FLSA and NYLL.

## FACTS

LND Employed Plaintiffs and the Class on Public Works Projects Under Contract with New York State

21. LND entered into certain public works contracts, either as prime contractor or subcontractor, with the State of New York, public benefit corporations, municipal corporations, or commissions appointed pursuant to law, and/or with prime contractors not currently known, to furnish labor, material, and equipment for the performance of electrical work, including but not limited to electrical testing, inspection, maintenance, service, and repair of electrical systems at public facilities throughout New York State.

22. Public records available from the Office of the New York State Comptroller indicate that LND has entered into around 25 electrical work contracts with New York State since 2022. A list of said contracts, along with associated information available from the Office of the Comptroller, is attached as Exhibit 1 to this complaint.

23. LND's public works contracts, as a matter of fact or by operation of law, required that LND pay and ensure payment of the prevailing rates of wages and supplemental benefits to all workers furnishing labor on the site of the public works projects, including their direct employees and all other persons furnishing such labor.

24. The public works contracts also provided, as a matter of fact or by operation of law, that any contracts or subcontracts that LND entered into contain language requiring the payment of prevailing wages and supplemental benefits to all workers furnishing labor on the sites of the public works contract.

25. As required by law, schedules containing prevailing wages and supplemental benefits to be paid to the Plaintiffs and Class Members should have been annexed to and formed a part of the public works contracts entered into by LND. If not annexed to the public works

contracts, such schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

26. The promise to pay and ensure payment of the prevailing wage and supplemental benefit rates in the public works contracts was made for the benefit of all workers furnishing labor on the sites of the public works projects and, as such, the workers furnishing labor on the sites of the public works projects are the beneficiaries of that promise and the contracts entered into between LND and government agencies.

<u>LND Failed to Pay Plaintiffs and the Class All Prevailing Wages Owed Under Its Public Works Contracts</u>

27. In furtherance of the public works contracts entered into by LND, Plaintiffs and Class Members performed testing to ensure proper and safe functioning of electrical systems, including but not limited to low-, medium-, and high-voltage switchgear and transformers, high-voltage breakers, and live automatic transfer switches. Plaintiffs and the Class used testing procedures such as infrared scanning, oil extraction and testing, and arc flash studies. Plaintiffs and the Class additionally performed hands-on preventive and corrective maintenance of electrical systems, including by disassembling and re-assembling electrical systems and replacing components.

28. LND willfully paid Plaintiffs and other members of the putative class less than the prevailing rates of wages and supplements to which they were entitled for their labor on public works projects within New York State.

29. LND knew it was required to pay Plaintiffs and the Class at prevailing wage rates for their work under its public contracts with New York State.

30. On occasion, LND issued lump sum payments to Plaintiffs, reporting them on wage statements as prevailing wage payments tied to specific public projects. The statements

reflected neither the applicable prevailing wage and supplemental benefit rates nor the number of work hours the payments were intended to compensate.

31. LND made the lump sum payments to Plaintiffs on an irregular basis, often weeks after Plaintiffs had worked on the projects listed on the lump sum wage statements.

32. LND failed to pay Plaintiffs and the Class at least the applicable prevailing wage rate and supplemental benefit rate or equivalent fringe benefits for all hours worked on its public projects.

33. Plaintiffs are unable to calculate the exact amount of underpaid prevailing wages and supplemental benefits because LND did not provide them with documentation, required by the NYLL, of how it calculated their wages and supplemental benefits. The applicable prevailing wage rate varies based on the county in which the work is performed.

34. At the time of Mr. Cerda's separation in August of 2026, LND paid him at a rate of approximately $36 per hour. At the time of Mr. Cardoza's separation in 2025, LND paid him approximately $37 per hour.

35. Under the prevailing wage schedule published by the New York State Department of Labor covering July 1, 2025 to June 30, 2026, prevailing rates for the "Electrician" classification range from around $42.68 per hour in wages plus $31.78 per hour in supplemental benefits (for work performed in Broome County), to around $62 per hour in wages plus $70.75 per hour in supplemental benefits (for work performed in New York City).

36. The lump sum payments made by LND to Plaintiffs were insufficient to raise their compensation for work on public projects to at least the prevailing wage rate.

37. Fringe benefits provided by LND to Plaintiffs did not meet the hourly applicable supplemental benefit rates, and LND failed to cover the difference with cash payments.

LND Failed to Pay Plaintiffs, the Collective, and the Class for Overtime, including Compensable Travel Time, and Off-the-Clock Work.

38. LND maintained, and upon information and belief, continues to maintain a policy or practice of not paying Plaintiffs, the Class, and the Collective overtime pay.

39. Plaintiffs regularly worked more than 40 hours per work week.

40. LND required Plaintiffs to travel away from their home communities to worksites throughout New York State to meet its obligations under its public works contracts. Plaintiffs generally worked at a single site for around two to three weeks, staying at a hotel in the vicinity. LND generally assigned teams of around five Class and Collective Members, including Plaintiffs, to a worksite, as well as a manager. After finishing their assignments at a given site, Plaintiffs and other Class and Collective Members would travel home, or on occasion, directly on to the next worksite.

41. While assigned to a given public worksite, Plaintiffs regularly worked six or seven days per week for the duration of their stay. Their shifts varied in length depending on the needs of a given project, but were generally at least 8 hours, and often as long as around 12 hours.

42. LND required Plaintiffs to perform work before the nominal start of their shifts at public worksites.

43. Plaintiffs were required to report to a designated meeting place, generally the lobby of the hotel in which they were staying, approximately an hour before they were scheduled to start at their assigned worksites. Plaintiffs, other Class and Collective Members present, and their manager then traveled together to the worksite. While doing so, they planned out their day's work and transported necessary equipment. Plaintiffs and other Class and Collective Members transported their own tools and regularly transported electrical testing equipment rented by LND

to their worksite. Additionally, Plaintiffs' managers required them to complete paperwork before signing into their worksites.

44. LND required Plaintiffs to perform additional work even after the nominal end of their shifts.

45. After signing out of their worksites, Plaintiffs regularly had to spend approximately an hour of work to pack up electrical testing equipment for transportation.

46. LND permitted, and encouraged, Plaintiffs to take additional time after hours to complete paperwork documenting performance of electrical testing, maintenance, and repair assignments. The manager assigned to a particular worksite communicated with Plaintiffs about completion of the paperwork, which was a necessary part of LND's work under its public contracts. On regular occasions, LND managers would gather Class and Collective Members staying at a hotel to instruct them on how to document their work. While Mr. Cardoza generally did not engage in these tasks, Mr. Cerda regularly spent at least 10 hours per week on documentation in the first two years of his employment.

47. Plaintiffs engaged in other forms of travel as part of their principal activities.

48. Before and after a rotation at a given worksite, Plaintiffs regularly had to pick up or drop off electrical testing equipment rented by LND from a site separate from the public works project. The amount of time required for these trips varied depending on the location of the worksite, the equipment vendor, and where Plaintiffs happened to be staying, but could take several hours.

49. LND required Plaintiffs and the Class to travel to public work sites for multi-day trips away from home, cutting across their regular work hours.

50. Mr. Cardoza regularly traveled by plane from Florida to worksites in New York State as part of his everyday job duties. These trips often took approximately six or seven hours, including time spent traveling from his home to the airport, in flight, and traveling from the airport to a hotel in the area of the worksite. Mr. Cardoza regularly took morning flights, arriving at his destination in the mid-afternoon, hours during which he normally worked. After completing a project, which could take days or weeks, Mr. Cardoza completed the same trip home or traveled directly to the next project.

51. Mr. Cerda regularly traveled from his home in Pennsylvania to worksites in New York State as part of his everyday job duties. Mr. Cerda drove from his home to hotels near the various work sites, a trip which generally took around four hours. After completing a project, Mr. Cerda completed the same trip home or traveled directly to the next assignment. Mr. Cerda's travel away from home cut across his regular working hours. On outbound trips, Mr. Cerda often drove through the morning or early afternoon, times when he would normally be working for LND. On occasion, Mr. Cerda's return trips also cut through these hours.

52. Mr. Cerda also had to make the same or similar trips from his home to worksites in New York to respond to emergency maintenance issues on LND's behalf.

53. Plaintiffs regularly worked no less than 50 hours per week and frequently worked over 70 hours per work week.

54. LND knew Plaintiffs regularly worked more than 40 hours per week but did not pay them required overtime. Plaintiffs signed into and out of their jobsites each workday, documenting their entry and exit times. For a period in or around 2026, LND also allowed Plaintiffs and Class and Collective Members to submit timesheets. Plaintiffs submitted time

sheets showing more than 40 hours of work per week but, like many other weeks, were not paid time and one-half their regular rate for those hours worked in excess of 40 in a week.

55. Plaintiffs additionally communicated with LND management about their work hours.

56. In or around August of 2024, Mr. Cerda voiced concerns about LND's payment practices to LND human resources, as well as Vice President of Global Operations Kevin Halma. Mr. Cerda described his long work hours and asked if LND paid overtime. Both Mr. Halma and LND human resources told him LND did not pay overtime because Mr. Cerda and his coworkers were "salaried" employees.

57. LND provided wage statements describing Plaintiffs as "salaried" employees and consistently paid them for only 40 hours of work, regardless of their true work hours.

58. As late as November 2, 2026, LND's website described field service technicians, the position held by Mr. Cerda and Mr. Cardoza, as "exempt / salaried," though there is no applicable overtime exemption under the FLSA or NYLL.

59. LND did not compensate Plaintiffs at the applicable prevailing wage rates for time spent in travel on overnight trips away from home, traveling from the designated meeting place to their worksites, other travel time forming part of their principal activities, completing necessary documentation, transporting or handling equipment, and performing other off-the-clock work.

60. LND willfully failed to pay overtime compensation required to Plaintiffs, the Class, and the Collective.

## COLLECTIVE ACTION ALLEGATIONS

61. Plaintiffs bring FLSA claims collectively on behalf of themselves and similarly situated employees, defined as: all persons employed by Defendant to perform electrical testing, inspection, maintenance, service, and repair work within New York State at any point over the 3 years preceding the initial filing date of the Complaint in this case.

62. The identities of FLSA Collective members, including present and former employees over the relevant statutory period, are unknown, and information regarding the precise number of Collective Members is in the sole control of Defendant.

63. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and putative Collective Members, and as such, notice should be sent to all others similarly situated. There are numerous similarly situated current and former employees of Defendant who have been similarly underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join.

## CLASS ACTION ALLEGATIONS

64. Plaintiffs assert their NYLL claims on their own behalf and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(3), defined as all persons employed by Defendant to perform electrical testing, inspection, maintenance, service, and repair work within New York State at any point over the 6 years preceding the initial filing date of the Complaint in this case.

65. The persons in the Class are so numerous that joinder of all members is impracticable. The precise number of class members is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendant.

66. Upon information and belief, LND employed approximately 25 to 30 employees to perform electrical testing, repair, and maintenance services at the time of Mr. Cerda’s

resignation in August of 2026, each of whom would have performed at least some work in New York State. There are additional former employees of LND who performed electrical testing, and maintenance work in New York State. Upon information and belief, there are at least 40 Class Members among LND's current or former employees.

67. Joinder of all class members is particularly impracticable as, upon information and belief, many Class Members are domiciled outside New York State but travel there to perform work for LND. As a result, Class Members are likely to face significant difficulty participating in this action absent class treatment.

68. There are questions of law and fact common to the Class that predominate over any questions affecting only individual members, including:

a. Whether LND entered into certain public works contracts with New York State government agencies to furnish the necessary labor, material, and equipment to perform work upon the public works projects;

b. Whether LND paid Plaintiffs and the Class the proper prevailing rates of wages and supplemental benefits due to them for furnishing labor on the sites of the public works projects;

c. Whether LND paid Plaintiffs and the Class in full at the applicable prevailing rates of wages and supplemental benefits for all hours worked on public works projects.

d. Whether LND paid Plaintiffs and the Class time and one-half the applicable regular rate for all hours worked over forty in a week;

e. Whether LND failed to pay Plaintiffs and the Class all wages earned on a timely basis as required by NYLL § 191;

f. Whether LND failed to pay Plaintiffs and the Class for compensable travel time on overnight trips away from home, from designated meeting points to their worksites, or for other travel performed as part of their principal activities;

g. Whether LND failed to pay properly Plaintiffs and the Class for work performed before and after the nominal start of their shifts;

h. Whether Defendant provided Plaintiffs and the Class, at the time of their hire, notices meeting the requirements outlined in NYLL § 195(1)(a); and

i. Whether Defendant provided to Plaintiffs and the Class, with each payment of wages, wage statements meeting the requirements outlined in NYLL § 195(3).

69. The claims of Plaintiffs are typical of the claims of the Class.

70. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

71. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

72. Defendant has acted on grounds generally applicable to the Class, thereby making relief appropriate for the Class.

**<u>FIRST CAUSE OF ACTION</u>**

**FLSA Overtime**

*On behalf of Plaintiffs and the Collective*

73. Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

74. At all times relevant to this action, Plaintiffs and the Collective were employed by Defendant within the meaning of the FLSA, 29 U.S.C. § 203(d)-(e).

75. Defendant violated the rights of Plaintiffs and Collective Members by failing to pay overtime compensation at a rate not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 per week, in violation of the FLSA, 29 U.S.C. § 207(a)(1).

76. For weeks in which Plaintiffs and the Collective spent more than 40 hours on public work pursuant to LND's New York State contracts, LND was required to pay them overtime at a regular rate calculated from the applicable prevailing wage and supplemental benefit rates but failed to do so.

77. LND failed to pay overtime wages for travel time spent by Plaintiffs and the Collective on overnight trips away from their home communities cutting across their regular working hours and travel time spent as part of their principal activities, including but not limited to travel from designated meeting points to their worksites. Such time is compensable and must be counted for purposes of determining Plaintiffs and the Collective's overtime pay under the FLSA, pursuant to 29 CFR §§ 785.38-39.

78. Defendant's failure to pay Plaintiffs and Collective Members overtime compensation was willful within the meaning of the FLSA, 29 U.S.C. § 255.

79. Defendant is liable to Plaintiffs and Collective Members for their unpaid overtime compensation, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

**Breach of Third-Party Beneficiary Contract Requiring Payment of Prevailing Wages**

*On behalf of Plaintiffs and the Class*

80. Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

81. Upon information and belief, LND entered into public works contracts which contained, as a matter of fact or by operation of law, schedules of the prevailing rates of wages and supplemental benefits to be paid to Plaintiffs and the Class.

82. Those prevailing rates of wages and supplemental benefits were made part of the public works contracts for the benefits of the Plaintiffs and the Class.

83. LND breached the public works contracts by failing to pay Plaintiffs and the putative class members the prevailing rates of wages and supplemental benefits for all labor performed upon the public works projects.

84. As a result of its breach of the public works contracts, LND is liable to Plaintiffs and the Class for the value of the unpaid prevailing wages, supplemental benefits, and interest.

## THIRD CAUSE OF ACTION

### Quantum Meruit

*Pleaded in the alternative on behalf of Plaintiffs and the Class*

85. Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

86. Plaintiffs and the putative class members have performed numerous, valuable services at the request and for the benefit of LND. Plaintiffs and the putative class members were not paid the reasonable value of those services.

87. As a result, LND is liable to Plaintiffs and the Class for the reasonable value of those services, less the non-prevailing wages already paid, plus interest.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

*Pleaded in the alternative on behalf of Plaintiffs and the Class*

88. Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

89. Plaintiffs and the Class have performed a significant amount of work for which they have not been properly paid.

90. When LND entered into the public works contracts, it agreed, as a matter of fact or by operation of law, to pay the required prevailing wage, overtime, and supplemental benefit rates to Plaintiffs and the Class.

91. Upon information and belief, the amount paid to LND by its public customers for labor performed by Plaintiffs and the Class was based on applicable prevailing wage and supplemental benefit rates, exceeding the actual compensation paid to Plaintiffs and the Class.

92. As a result of this failure to pay said wages, LND was unjustly enriched for work and services performed by Plaintiffs and the Class.

## FIFTH CAUSE OF ACTION

### NYLL Timely Payment

*On behalf of Plaintiffs and the Class*

93. Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

94. NYLL § 191 requires that a manual worker be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned.

95. Plaintiffs and the Class are manual workers within the meaning of the New York Labor Law, as they spent the majority of their working time engaged in physical labor involving electrical testing and repair and maintenance of electrical systems.

96. Defendant failed to pay Plaintiffs and the Class their wages within the time required by the New York Labor Law, including, without limitation, by paying Plaintiffs and the Class partial amounts of prevailing wages and supplemental benefits for labor on public projects weeks after Plaintiffs and the Class performed such labor.

97. As a result of Defendant's violations, Plaintiffs and the Class are entitled to recover liquidated damages, prejudgment interest, and reasonable attorney's fees and costs. NYLL § 198.

**SIXTH CAUSE OF ACTION**

**NYLL Overtime and Unpaid Wages**

*On behalf of Plaintiffs and the Class*

98. Plaintiffs allege and incorporate by reference the allegations contained in the preceding paragraphs.

99. The NYLL, through the Minimum Wage Order for Miscellaneous Industries and Occupations, requires LND to pay Plaintiffs and the Class for hours worked in excess of 40 hours in a workweek at a rate of one-and-a-half times an employee's regular rate of pay. 12 NYCRR § 142-2.2.

100. NYLL § 198(3) additionally requires LND to pay Plaintiffs and the Class full wages, benefits, wage supplements, and liquidated damages accrued during the six years previous to the commencement of this action, with no exception for unauthorized failure to pay the same.

101. Defendant violated the rights of Plaintiffs and Class Members by failing to pay overtime compensation at a rate not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 per week.

102. For weeks in which Plaintiffs and the Class spent more than 40 hours on public work pursuant to LND's contracts, LND was required to pay them overtime premiums at a regular rate calculated from the applicable prevailing wage and supplemental benefit rates.

103. LND failed to pay overtime and straight time wages for travel time spent by Plaintiffs and the Collective on overnight trips away from their home communities cutting across

their regular working hours, travel time spent as part of their day's work, including but not limited to travel from designated meeting points to their worksites, and other uncompensated work before and after their nominal shifts.

104. Defendant is therefore liable to Plaintiffs and Class Members for their unpaid wages, unpaid overtime compensation, liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief.

## SEVENTH CAUSE OF ACTION

### NYLL Hiring Notice

*On behalf of Plaintiffs and the Class*

105. Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

106. Pursuant to NYLL § 195(1)(a), every employer is required to provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; prevailing wage supplements, if any, claimed as part of any prevailing wage or similar requirement pursuant to article eight of the NYLL; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer; an employee's overtime eligibility; their regular rate of pay; and their overtime rate of pay; plus such other information as the commissioner deems material and necessary.

107. Where an employer offers prevailing wage supplements to satisfy any prevailing wage requirements, the notice must further identify: (i) the hourly rate claimed; (ii) the type of supplement, including when applicable, but not limited to, pension or healthcare; (iii) the names and addresses of the person or entity providing such supplement or such home care aide benefits; and (iv) the agreement, if any, requiring or providing for such supplement, together with information on how copies of such agreements or summaries thereof may be obtained by an employee.

108. Defendant willfully failed to provide Plaintiffs and the Class with notices at the time of hiring or upon changes in any of the information required to be included in such notices.

109. Defendant injured Plaintiffs and the Class by not providing a hiring notice. In so doing Defendant prevented Plaintiffs and the Class from understanding the basis for calculations of their wages, wage supplements and benefits, and overtime eligibility, denying Plaintiffs and the Class the opportunity to advocate for and receive proper payment of wages. Defendant's failure to provide a hiring notice injured Plaintiffs and the Class in other ways, including but not limited to confusing them about how they were to be paid, preventing them from realizing Defendant's payments did not meet the requirements of the NYLL or LND's public works contracts and were thus unlawful, and forcing them to expend time and effort to gain basic insights into Defendant's pay practices.

110. NYLL § 198(1)(b) provides that any employee not provided a hiring notice may collect damages of $50 for each workday that the violation occurred or continued to occur, up to a total of $5,000 per employee.

111. Defendant is therefore liable to Plaintiffs and Class Members in the amount of up to $5,000 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

## EIGHTH CAUSE OF ACTION

### NYLL Wage Statements

*On behalf of Plaintiffs and the Class*

112. Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

113. Pursuant to NYLL § 195(3), every employer is required to furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; an employee's regular and overtime hours worked; and an employee's regular and overtime rates of pay.

114. Where an employer offers prevailing wage supplements to satisfy any prevailing wage requirements; such statements must additionally either: (i) identify the type of each supplement claimed, and the hourly rate for each; or (ii) be accompanied by a copy of the hiring notice required by NYLL § 195(1)-(2).

115. Defendant willfully failed to provide Plaintiffs and the Class with wage statements meeting the requirements of NYLL § 195(3). *Inter alia*, Defendant provided Plaintiffs and the Class with wage statements that did not accurately reflect their hours worked, their applicable prevailing wage rate or overtime rate, any information about prevailing wage supplemental benefits, or copies of the notices required by NYLL § 195(1)-(2).

116. Defendant injured Plaintiffs and the Class by not providing wage statements with the information required by NYLL § 195(3). In so doing, Defendant prevented Plaintiffs and the Class from understanding the basis for calculations of their pay, supplemental benefits, and their overtime eligibility, denying Plaintiffs and the Class the opportunity to advocate for and receive proper payment of wages. Defendant hindered Plaintiffs and the Class from realizing and recording their true hours worked each workweek, in turn preventing them from determining and seeking payment for the precise wages owed under the NYLL. Similarly, Defendant's failure to provide statements reflecting Plaintiffs and Class Members' accurate overtime, regular rates, and supplemental benefit rates prevented them from realizing the true extent of Defendant's underpayment of wages.

117. NYLL § 198(1)(d) provides that any employee not provided appropriate wage statements may collect damages of $250 for each workday that the violation occurred or continued to occur, up to a total of $5,000 per employee.

118. Defendant is therefore liable to Plaintiffs and Class Members in the amount of up to $5,000 per employee, plus reasonable attorney's fees and costs and any other relief appropriate pursuant to NYLL § 198.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

a. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23;

b. Certification of this case as a collective action pursuant to 29 U.S.C. § 216(b);

c. Issuing proper notice to the Collective at Defendant's expense;

d. Designation of the named Plaintiffs Victor Cerda and Odanis Cardoza as class representatives and designation of their counsel of record as Class and Collective counsel;

e. The difference between the wages paid to Plaintiffs and the Class for work on public works projects and the amount owed for all hours worked at the proper, lawful prevailing wage and supplemental benefit rates, as determined by the New York State Department of Labor or other public agencies empowered to set prevailing wage rates, liquidated damages, interest, and attorney's fees pursuant to NYLL § 198;

f. Unpaid overtime wages and liquidated damages under the FLSA;

g. Unpaid straight time wages, overtime wages, and liquidated damages under the NYLL and its implementing regulations, including liquidated damages for all late paid wages, interest, and attorney's fees pursuant to NYLL § 198;

h. Statutory damages pursuant to NYLL § 198(1-b) and (1-d);

i. Issuance of a declaratory judgment that the practices complained of herein, including but not limited to failing to pay employees on a timely basis, are unlawful under the FLSA and NYLL; and

j. Any and all other relief the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP 38(b), Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated: New York, New York
November 16, 2026

**MENKEN SIMPSON & ROZGER LLP**

By: *_/s/Michael Diller*

Michael Diller
Bruce Menken
225 Broadway, Suite 920
New York, NY 10007
(212) 509-1616
mdiller@nyemployeelaw.com